**MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Appellant,**

v.

**LaSALLE FARMERS GRAIN COMPANY, INC., Mike Masters, Respondents.**

No. C2–86–563.

Court of Appeals of Minnesota.

Oct. 14, 1986.

Review Denied Nov. 26, 1986.

James H. Malecki, Mark S. Ullery, Gislason, Dosland, Hunter & Malecki, New Ulm, for Mutual Service Cas. Ins. Co.

Daniel A. Birkholz, St. James, for LaSalle Farmers.

Clark A. Tuttle, III, Berens, Rodenberg, O'Connor, Olson, Hinnenthal & Tuttle, New Ulm, for Masters.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Mutual Service Casualty Insurance Company (MSI) brought a declaratory judgment action against LaSalle Farmers Grain Company (LaSalle) and Mike Masters to determine whether an insurance policy issued to LaSalle excluded liability coverage for damage done to Mike Masters' crop when LaSalle applied a herbicide by aerial spraying. The trial court held that MSI must provide coverage or indemnify LaSalle but that no coverage existed for damage resulting solely from aerial application. MSI appeals the judgment. We affirm.

## FACTS

In the early spring of 1983, Mike Masters contacted James Hoeft, Agronomy Division manager for LaSalle, to arrange for the spraying of a herbicide chemical on 300 acres of soybeans. On June 23, 1983, LaSalle used a land vehicle to spray Treflan and Vernam on the field.

Following the early June spraying, Masters reported a volunteer corn growth problem and he and Hoeft agreed that a second spraying of the fields was necessary. On July 7 to 10, 1983, Masters' fields were sprayed with a combination of Poast and Basagran. Mr. Hoeft supervised the mixing of these chemicals and they were applied to the fields by LaSalle employees. This application was also by land vehicle.

Approximately a week after the application of the Poast and Basagran Masters told Hoeft that the chemical had not been effective. Mr. Hoeft inspected the soybean field and determined that remedial measures should be taken. He also discovered he had made a mistake in mixing the Poast and Basagran and contacted his supervisor, Mr. John Graff, to determine whether there would be insurance coverage. Mr. Graff instructed Mr. Hoeft to contact Skip Wilhelm, MSI's representative in the area. Mr. Hoeft explained the situation to Mr. Wilhelm, and said LaSalle could respray the field with Poast and Basagran or with the less expensive Fusilade to mitigate the damage. Mr. Wilhelm indicated that he was unsure as to the extent of coverage and told Hoeft to contact Mr. Dave Milford at the Minneapolis office. Mr. Hoeft contacted Mr. Milford and claims Milford authorized him to go ahead with the application of Fusilade. Hoeft admits that he did not indicate that the Fusilade would be put on by plane. On August 3, 1983, MSI contacted Mr. Henderson, an independent insurance adjustor, and requested that Henderson investigate a possible claim by Masters for damage to his crops as a result of LaSalle's spraying activities. Mr. Henderson investigated and advised MSI that there appeared to be about $4,200 of damage. MSI responded with a letter to Henderson indicating that Henderson should monitor the yield of Masters field carefully so that they could determine accurately the amount of damage caused by LaSalle's negligence.

This letter to Henderson made reference to an endorsement on LaSalle's policy covering the application of agricultural chemicals. The endorsement, in part, provided:

B. FIELD APPLICATION OF AGRICULTURAL CHEMICALS—PROPERTY DAMAGE (PARTICIPATING FORM)

In consideration of the premium charged and subject to the limits of liability, exclusions and other terms and conditions of the policy, coverage afforded for property damage liability under the comprehensive general liability insurance coverage provision of the policy *includes coverage for damage, resulting from an occurrence, arising out of and during the course of the application of agricultural chemicals. This includes the reduction in yield of agricultural crops arising out of the application of an inadequate amount or improper type of agricultural chemical to the affected crops or the land on which they are grown,* or arising out of the failure to apply chemicals to a portion of a field because of equipment malfunction or operator error.

SPECIAL PROVISION:

This endorsement provides coverage for errors occurring during the course of application of agricultural chemicals but does not apply to the failure to make any application of agricultural chemicals.

DEFINITION:

*Application is the physical act of intentionally causing agricultural chemicals to be applied upon an area of land with the use of a land vehicle* and is limited to operations performed by or on behalf of the insured while on the field on which chemicals are being applied.

INSUREDS PARTICIPATION:

The insured shall be responsible for a 20% share of the loss payments made under this endorsement subject to a mini-

mum share of $250.00 and a maximum share of $1,000.00, per occurrence. (emphasis added).

However, Milford included the copy of the endorsement only to indicate that the insured had a participation clause which would require LaSalle to share the loss.

The soybeans were harvested in late October and Mr. Henderson then revised his estimate of damage to $34,262.51. At this point, MSI contacted Allan Beck, a consulting agronomist, and asked him to review the matter. Mr. Beck submitted his report, which indicated, among other things, that the Fusilade had been applied by air. Beck also indicated that it was not aerial application that caused the damage.

After receiving this report, MSI notified LaSalle on December 20, 1983, that there would be no coverage for damage because the loss resulted from aerial application of the Fusilade instead of application by land vehicle.

## ISSUE

Did the trial court err in ordering MSI to provide coverage or indemnity for negligent application of herbicide chemicals, excluding any damage caused solely by aerial application?

## ANALYSIS

The court will not redraft an unambiguous insurance contract to provide coverage where no coverage exists. *Stein v. National Farmers Union Property & Casualty Company*, 281 Minn. 287, 161 N.W.2d 533 (1968); *Ostendorf v. Arrow Insurance Company*, 288 Minn. 491, 182 N.W.2d 190 (1970). Here the contract between MSI and LaSalle clearly provided coverage for damage resulting from Hoeft's negligence in mixing the chemicals. In an effort to mitigate the damage and reduce the loss, LaSalle notified the insurance company that the field could be resprayed with the same chemical or a less expensive spray called Fusilade. Without the negligent application, the aerial application would not have occurred.

To absolve Mutual Service now from responsibility to cover its insured's negligence by claiming that subsequent conduct of its insured designed to mitigate damages is identifiable as an act which excludes coverage even on the initial negligent acts borders on the ludicrous. Mutual Service is protected under the trial court's ruling because any damage sustained solely as a result of aerial application is still excluded from coverage.

## DECISION

The trial court was correct in ordering MSI to provide coverage or indemnity for damage done by LaSalle's negligent application of agricultural chemicals by land vehicle. This disposition of the insurance coverage question eliminates the necessity of deciding the issues of waiver and estoppel raised by respondents.

Affirmed.